IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. |
| BAYER CROPSCIENCE INC. and PHARMACIA CORPORATION, | ) | |
| Defendants. | ) | |

## COMPLAINT

The United States of America, by authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), files this complaint and alleges as follows:

### NATURE OF THE ACTION

1.      This is a civil action under Sections 106, 107(a) and 113(g) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606, 9607(a), and 9613(g).  The United States seeks to recover costs incurred by the United States Environmental Protection Agency ("EPA") and the U.S. Department of Justice ("DOJ")  in connection with the Industri-plex Superfund Site ("Site"), Second Operable Unit ("Industri-plex OU2") located in the vicinity of Woburn, Massachusetts.  The United States also seeks a declaratory judgment that the defendants are liable for future response costs that will be incurred by the United States in connection with Industri-plex OU2.  Finally, the United States seeks

-2-

implementation of the remedial action selected for Industri-plex OU2 in the Record of Decision issued by EPA Region 1 for Industri-plex OU2 on January 31, 2006 ("OU2 ROD").

## JURISDICTION AND VENUE

2.  This Court has jurisdiction over the subject matter of this action pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. §§ 1331 and 1345.  Venue is proper in the District Court of Massachusetts pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. § 1391, because the claims arose in this district and the release or threatened release of hazardous substances occurred in this district.  The Court has in personam jurisdiction over the defendants and/or the defendants have waived any objection to in personam jurisdiction.

## DEFENDANTS

3.  Pharmacia Corporation ("Pharmacia") is incorporated under the laws of Delaware and has its principal place of business in Peapack, New Jersey.

4.  Bayer CropScience Inc. ("BCI") is incorporated under the laws of New York and has its principal place of business in Greensboro, North Carolina.

## DISPOSALS

5.  In 1853, Robert Eaton established the Woburn Chemical Works at what is now known as the First Operable Unit of the Industri-plex Superfund Site ("Industri-plex OU1"), located in Woburn, Massachusetts.  In 1863, Eaton and others formed the Merrimac Chemical Company ("Merrimac").  From 1858-1890, Merrimac produced sulfuric acid and other related chemicals.  Between 1899 and 1915, Merrimac became the leading U.S. producer of arsenic insecticides.  In 1915, Merrimac organized a separate company which operated at the Site, called

-3-

the New England Manufacturing Company ("NEMC"), a munitions manufacturer. NEMC produced organic chemicals including phenol, benzene, picric acid, toluene and trinitrotoluene (TNT). In November, 1929, Monsanto Company ("Old Monsanto") purchased and merged with Merrimac, which continued to operate at the Site as a division of Old Monsanto until 1931.

6. As a result of these operations, various hazardous substances were disposed of at the Site including, among others, arsenic, chromium, lead, and benzene.

7. In 2000, Old Monsanto changed its name to Pharmacia Corporation.

8. New England Chemical Company purchased the property formerly occupied by Merrimac and Old Monsanto in 1934 and constructed an animal hide glue manufacturing plant, commencing operations in 1935. Glue was made by extracting collagen from animal tissue or bones, including raw, salted or limed hides, hide fleshings or chrome tanned leather scraps. Consolidated Chemical Company purchased New England Chemical Company in 1936. Stauffer Chemical Company purchased Consolidated Chemical Company in the early 1960s. Stauffer Chemical Company continued glue manufacturing operations until 1969, when it completed equipment removal and vacated the Site.

9. As a result of the glue-making operations, various hazardous substances were disposed of at the Site including, among others, chromium. The animal hides disposed of as a result of the glue-making operation have generated ammonia and have created reducing conditions that have rendered various hazardous substances at the Site more mobile.

10. Stauffer Chemical Company, after a series of name changes, changed its name to Rhone-Poulenc Basic Chemicals Company in 1989. In 1992, Rhone-Poulenc Basic Chemicals Company merged into Rhone-Poulenc, Inc. Rhone-Poulenc, Inc., after a series of name changes,

-4-

is now known as Bayer CropScience Inc.  Bayer Cropscience Inc. is a successor-in-interest to Stauffer Chemical Company.

11.    As a result of the industrial operations noted above, both Industri-plex OU1 and Industri-plex OU2 are contaminated with various hazardous substances including, among others, arsenic, chromium, lead, ammonia, and benzene.

## RESPONSE ACTIONS

12.    Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605,  EPA placed the Site on the National Priorities List, set forth at 40 C.F.R. Part 300, Appendix B, by publication in the Federal Register on September 8, 1983, 48 Fed. Reg. 40658-40673.

13.    In 1986, EPA issued a Record of Decision for the First Operable Unit at the Site ("OU1 ROD").  The OU1 ROD addressed the contamination at approximately 245 acres located in the vicinity of industrial operations conducted by the defendants or other predecessors.

14.    The OU1 ROD called for the construction of permeable protective caps over more than 100 acres of soils contaminated with heavy metals (e.g., arsenic, lead, chromium) and animal wastes to prevent people from coming into contact with the contamination; construction of an impermeable protective cap and a gas (hydrogen sulfide) collection and treatment system over approximately 5 acres; establishment of  institutional controls to preserve the continued effectiveness of the Industri-plex OU-1 remedy to protect human health and the environment; implementation of an interim groundwater remedy for groundwater hot spots of benzene and toluene contamination; and  further investigations (known as the Groundwater/Surface Water Investigation Plan or "GSIP") of site-related contamination at and downstream of Industri-plex OU-1 along the Aberjona River to support a Second Operable Unit for the Site.

-5-

15.     In 1989, the United States District Court for the District of Massachusetts approved a Consent Decree entered into by the defendants in this action (or their predecessors) as well as a number of other parties ("1989 Decree").  The 1989 Decree required the settling defendants to implement the remedy set forth in the OU1 ROD and to reimburse the United States and the Commonwealth of Massachusetts for certain costs incurred in connection with the Site.

16.     The Wells G&H Superfund Site consists of approximately 330 acres situated in East Woburn, Massachusetts, and is located approximately 1 mile downstream of Industri-plex OU-1 along the Aberjona River.   The Wells G&H Superfund Site was placed on the National Priorities List on September 8, 1983.  48 Fed. Reg. 40658-40673.

17.     Operable Unit 3 of the Wells G&H Superfund Site was known as the Aberjona River Study and required the investigation of the surface water and sediment contamination along the river and its associated wetlands.  In 2002, EPA announced its plan to merge the Aberjona River Study into Industri-plex OU-2 in order to establish one comprehensive cleanup plan for the Aberjona River and associated wetlands.

18.     On January 31, 2006, EPA issued a Record of Decision for Industri-plex OU2 ("OU2 ROD").  The OU2 ROD established a final groundwater remedy for the Site, and addressed downstream migration of contamination from Industri-plex OU1 and the contamination's impact on downstream areas.  The OU2 ROD set forth the following remedy for Industri-plex OU2: dredging and off-site disposal of contaminated sediments; use of a portion of the Halls Brook Holding Area Pond as a sediment retention area that intercepts contaminated groundwater plumes; construction of permeable and impermeable caps to prevent soil

-6-

contamination, groundwater plume discharge, and sediment contamination, respectively, from migrating downstream and potentially impacting components of the remedy; establishing institutional controls to restrict contact with contaminated soils, groundwater, or deeper interior wetland sediments with concentrations above performance standards; compensation of any loss of wetland functions associated with the selected remedy; long-term monitoring of the groundwater, surface water, and sediments; and, if necessary, in-situ enhanced bioremediation of groundwater plumes at the West Hide Pile.

19. EPA has determined that the actual and threatened release of one or more hazardous substances from the Site may present an imminent and substantial endangerment to the public health or welfare or the environment.

20. In connection with Industri-Plex OU2 (including the Third Operable Unit of the Wells G&H Site), EPA and DOJ incurred costs (through 9/30/07) and prejudgment interest (through 12/31/07) in the amount of approximately $14.1 million. These costs were incurred not inconsistent with the National Contingency Plan ("NCP"), 40 C.F.R. Part 300.

**FIRST CLAIM FOR RELIEF**

21. Paragraphs 1- 20, inclusive, are realleged and incorporated herein by reference.

22. Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides:

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section--
> * * *
>> (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
>> * * *
> from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for--

-7-

    (A) all costs of removal or remedial action incurred by the United States
    Government . . . not inconsistent with the national contingency plan; . . .

  23. Pharmacia is jointly and severally liable to the United States, under Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2), for the costs incurred and to be incurred by the United States in response to the release or threatened release of hazardous substances at or from Industri-plex OU2, because Pharmacia and/or predecessors-in-interest, owned and/or operated the Site during a period of time when hazardous substances were disposed of at the Site.

  24. BCI is jointly and severally liable to the United States, under Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2), for the costs incurred and to be incurred by the United States in response to the release or threatened release of hazardous substances at or from Industri-plex OU2, because BCI and/or predecessors-in-interest, owned and/or operated the Site during a period of time when hazardous substances were disposed of at the Site.

  25. Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), authorizes the issuance of a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages.

  26. In addition, the United States is entitled to an issuance of a declaratory judgment that Pharmacia and BCI are jointly and severally liable for future response costs incurred at Industri-plex OU2 not inconsistent with the NCP.

-8-

## SECOND CLAIM FOR RELIEF

27. Paragraphs 1-20 are realleged and incorporated herein by reference.

28. Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), provides in pertinent part:

> [W]hen the President determines that there may be an imminent and substantial endangerment to the public health or welfare or the environment because of an actual or threatened release of a hazardous substance from a facility, he may . . . secure such relief as may be necessary to abate such danger or threat . . . . The President may also, after notice to the affected State, take other action under this section including, but not limited to, issuing such orders as may be necessary to protect public health and welfare and the environment.

29. The President, through his appropriate delegate at U.S. EPA Region I, has determined that there is or may be an imminent and substantial endangerment to the public health or welfare or the environment at the Site.

30. Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), authorizes the United States to bring an action to secure such relief as may be necessary to abate the danger or threat at the Site.

31. Pharmacia is liable to the United States to abate the danger or threat at the Site.

32. BCI is liable to the United States to abate the danger or threat at the Site.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the United States of America, respectfully requests that:

1. Pharmacia and BCI be ordered to reimburse the United States for all response costs incurred or to be incurred by the United States relating to Industri-plex OU2, plus interest;

2. Enter a declaratory judgment that Pharmacia and BCI are jointly and severally liable for all future response costs incurred by the United States in connection with the Site not inconsistent with the NCP, pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2);

-9-

3. Pharmacia and BCI be ordered to implement the remedial action selected by EPA in the OU2 ROD;

4. The Court grant such other and further relief as the Court deems appropriate.

    RONALD J. TENPAS
    Assistant Attorney General
    Environment and Natural Resources Division

    <u>/s/ Donald G. Frankel</u>
    DONALD G. FRANKEL
    Trial Attorney
    Environmental Enforcement Section
    Environment and Natural Resources Division
    One Gateway Center
    Suite 616
    Newton, MA 02458
    617-450-0442


    MICHAEL J. SULLIVAN
    United States Attorney
    District of Massachusetts


    GEORGE B. HENDERSON, II
    Assistant United States Attorney
    District of Massachusetts
    United States Attorney's Office
    John Joseph Moakley United States Courthouse
    Suite 9200
    1 Courthouse Way
    Boston, MA 02210
    (617) 748-3100

OF COUNSEL:

DAVID PETERSON
Senior Enforcement Counsel
U.S. Environmental Protection Agency
Region I
1 Congress St.
Boston, MA 02114-2023